## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **APP-ORDER LLC,** | No. 25-cv-18783-WJM-MAH |
| Plaintiff, | **OPINION** |
| v. | |
| **HAROLD REYNOLDS,** | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court are two motions, which the Court considers together. First, Plaintiff App-Order LLC, d/b/a Zorts Sports ("Zorts") moves to compel arbitration. ECF No. 11 ("Arbitration Motion"). Second, Defendant Harold Reynolds moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 25 ("MTD"). Both motions are fully briefed, and the Court declines to hold oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As explained further below, the Arbitration Motion is **DENIED**, and the MTD is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

The Court begins by outlining the history of this case, accepting all well-pleaded factual allegations in the Complaint, ECF No. 1, as true for purposes of the MTD.

### A.    Factual Background

This case stems from a failed collaboration (the "Joint Venture") between Zorts, a Nevada limited liability company and a citizen of New Mexico, and Mr. Reynolds, a New Jersey resident, former Major League Baseball ("MLB") player, and current MLB employee. Compl. ¶¶ 1-3. During the summer of 2022, Mr. Reynolds's brother introduced officers of Zorts to Mr. Reynolds, who had previously attempted to partner with MLB on a software product for the youth sports market. *Id.* ¶¶ 18-19. Zorts, by contrast, had technical wherewithal from developing and maintaining a sports management platform connecting young athletes with sports leagues and other partners. *Id.* ¶¶ 9, 13, 16. Under the proposed deal, Mr. Reynolds would leverage his experience as a former player, as well as his ongoing relationship with MLB, to pitch a software product that Zorts would develop, building on its existing platform. *Id.* ¶¶ 19-22.

Subsequently, Mr. Reynolds and Zorts began negotiating a formal partnership, entering into a joint venture agreement in August 2022. *Id.* ¶¶ 1, 23, 26-27; *id.* Ex. A ("JV Agreement"). During the contract negotiations, Mr. Reynolds suggested that HR4, LLC

1

("HR4"), a Georgia limited liability company bearing Mr. Reynolds's initials and his jersey number, be a party to the Joint Venture. Compl. ¶¶ 17, 26; ECF No. 11-4 ("HR4 Agreement"), at HR400000436 (incorporated by reference at Compl. ¶ 17). Mr. Reynolds and Douglas Matthew Engleka were the original two members of HR4, with Mr. Reynolds having a 75% ownership stake, until Mr. Reynolds assigned Mr. Engleka 11.5% of his membership interest in September 2016. *Id.* Plaintiff alleges that HR4 was undercapitalized and failed to observe corporate formalities. Compl. ¶ 144.

Under the JV Agreement, the Joint Venture was to "offer[] a software as a service (SAAS) player profile application to Major League Baseball ('MLB') to catalogue and highlight amateur baseball players ('Application')." JV Agreement § 1(a). The JV Agreement expressly contemplated MLB joining, in which case the parties' profits and liabilities would be adjusted to one-third for each of Zorts, HR4, and MLB. *Id.* §§ 1(g)(i), 2(e)-(f). The JV Agreement also articulates the parties' responsibilities: Zorts was responsible for developing and maintaining the Application, while HR4 was responsible for negotiating with MLB, collaborating with Zorts on the Application, and creating video tutorials to explain and promote the Application. *Id.* § 3. The JV Agreement prohibits both parties from "providing services to MLB which are substantially similar to the Application." *Id.* § 1(f). The JV Agreement also states that "[a]ll software and other intellectual property developed by Zorts, including the Application and associated copyrights and trademarks, shall remain the sole and exclusive property of Zorts and not the Joint Venture." *Id.* § 1(i). Both parties must approve of any amendment. *Id.* § 2(c)(vi). Although Mr. Reynolds, an Administrator of the Joint Venture, signed the JV Agreement, he did so as a manager of HR4. *Id.* §§ 2(a), 5(k). The JV Agreement has an arbitration provision, with venue in Nevada. *Id.* § 4(c).

With the Joint Venture formalized, the parties secured an initial meeting in September 2022 with MLB, which went well. Compl. ¶¶ 38-41. As the next several months progressed, the Complaint states that Mr. Reynolds represented to Zorts that the partnership "was a done deal, and that Zorts would be in a co-equal partnership with MLB and HR4." *Id.* ¶ 43. The Complaint alleges that Mr. "Reynolds insisted on controlling the relationship with MLB," referencing a text message where Mr. Reynolds discouraged a Zorts employee from texting MLB executives and stated, "I got them." *Id.* ¶ 45. Mr. Reynolds also claimed responsibility for finalizing the paperwork. *Id.* ¶ 49.

Around the same time, the Complaint alleges that Mr. Reynolds met with the parent company of FieldLevel, Inc. ("FieldLevel"), a competitor of Zorts, learning that Fieldlevel's "core business was to connect high school baseball and softball players to college coaches and professional scouts, and that they had been working with MLB on an application like the Joint Venture's for several years." *Id.* ¶ 46. Ahead of a December 2022 meeting between Zorts, Mr. Reynolds, and MLB, Mr. Reynolds informed Zorts that FieldLevel might attend, which concerned Zorts because it planned to provide technical and competitive details about the Application at the meeting. *Id.* ¶¶ 50-51. Although Zorts initially requested that FieldLevel execute a non-disclosure agreement ("NDA") before Zorts presented its confidential information, Mr. Reynolds assured Zorts that FieldLevel

would join the Zorts-MLB-HR4 partnership, providing details about the revised ownership and revenue share structure, which assuaged Zorts to provide sensitive information at the meeting. *Id.* ¶¶ 52-62.

Although after the meeting, Mr. Reynolds represented to Zorts that the deal with MLB would close, the deal ultimately fell through. *Id.* ¶¶ 63-64. Mr. Reynolds explained that FieldLevel did not want to partner with the Joint Venture and that he would be joining the FieldLevel-MLB partnership. *Id.* ¶¶ 65-67. This dispute followed.

### B.    Procedural History

Initially, Zorts followed the dispute procedures as outlined in the JV Agreement, first conducting mediation, then initiating arbitration against both Zorts and Mr. Reynolds, which is currently pending in Nevada. *Id.* ¶¶ 68-70. Mr. Reynolds refused to participate in the arbitration, and the arbitrator determined that arbitrability was an issue for a court to determine. *Id.* ¶ 71.

Zorts then filed suit in Nevada state court, and after removal by Mr. Reynolds, the district court granted Mr. Reynolds's motion to dismiss for lack of personal jurisdiction. *App-Order LLC v. Reynolds*, No. 24-cv-01480, 2025 WL 743749, at *6 (D. Nev. Mar. 7, 2025). On December 19, 2025, Mr. Reynolds filed suit in this Court. The Complaint alleges ten claims: an order compelling arbitration, misappropriation of trade secrets under state and federal law, unfair competition, fraudulent inducement, breach of fiduciary duty, negligent misrepresentation, tortious interference, alter ego, and declaratory relief relating to the ownership of the intellectual property created for the Application. The two instant motions followed.

## II.    DISCUSSION

The Court first discusses the Arbitration Motion before turning to the MTD. The Court assumes, without deciding, that Nevada law (the law governing the JV Agreement, JV Agreement § 4(e)) applies to this dispute. *See* ECF No. 29 ("Arbitration Opposition"), at 8 n.1 (assuming that Nevada law applies to the Arbitration Motion); ECF No. 38 ("MTD Opposition"), at 13 n.5 (noting that there are no material differences between Nevada and New Jersey law); MTD 16 (asserting that there is no conflict between Nevada and New Jersey fiduciary duty law). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1), and 1367(a).

### A.    Motion to Compel Arbitration

Before evaluating the merits of the Arbitration Motion, the Court must first address Mr. Reynolds's argument that the Court lacks authority to compel him to arbitrate in Nevada. Arb. Opp'n 11-12; *see Henry ex rel BSC Ventures Holdings, Inc. v. Sass*, 72 F.4th 499, 504 n.5 (3d Cir. 2023) (stating that the Third Circuit "ha[s] held that 9 U.S.C. § 4 does not permit a district court to enter an order compelling arbitration outside the district where it sits"). Indeed, the Third Circuit has previously held that "the requirement that arbitration take place in the district court where the petition is filed is clear and unequivocal." *Econo-*

3

*Car Int'l v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974). Regardless of Plaintiff's reasonable arguments on the merits of how to interpret 9 U.S.C. § 4, the Court is bound by the Third Circuit and cannot issue an order compelling arbitration to occur outside of New Jersey.

The Court recognizes the paradox that, assuming *arguendo* that Mr. Reynolds is subject to arbitration, Nevada courts would lack the requisite personal jurisdiction over Mr. Reynolds to compel him to arbitrate, yet this Court, while possessing personal jurisdiction over him, could not compel arbitration. But there is no showing of bad faith as required to invoke judicial estoppel, as Mr. Reynolds's consistent position in litigation is that he did not agree to arbitrate. *See G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009) (explaining that judicial estoppel is a sanction requiring bad faith and a contradictory position). Should discovery provide a factual basis for specific personal jurisdiction in Nevada, Plaintiff may file an appropriate motion. At this time, however, the Court will not issue an advisory opinion on whether Mr. Reynolds must arbitrate when it lacks the power to issue an order compelling arbitration. *See* ECF No. 37 at 7-8. The Arbitration Motion is therefore **DENIED**.

### B.    Motion to Dismiss

Turning to the MTD, the Court applies the familiar plausibility standard, which requires the Complaint to include factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Courts must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although courts "may not consider matters extraneous to the pleadings," courts can consider a "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Court "may disregard any legal conclusions." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

#### 1.    *Arbitration-related Claims (Claims 1 and 9)*

Plaintiff's first claim for relief requests an order compelling arbitration in Nevada under the Federal Arbitration Act, 9 U.S.C. § 4. Compl. ¶¶ 74-83. This claim fails for the same reasons as the Arbitration Motion and is **dismissed without prejudice**.

Plaintiff's ninth claim for relief is for alter ego, arguing, in essence, that HR4 is an alter ego of Reynolds under Nevada law. *Id.* ¶¶ 139-47. Defendant argues that alter ego is not a standalone claim under Nevada law and otherwise fails on the merits. MTD 9-10.

As to Defendant's first argument, the Supreme Court of Nevada has referred to alter ego as a claim, not just a theory of liability. *See Gardner ex rel. L.G. v. Eighth Jud. Dist. Ct. in and for Cnty. of Clark*, 405 P.3d 651, 656 (Nev. 2017) ("[W]e hold the alter ego doctrine applies to LLCs"); *Certain v. Sunridge Builders, Inc.*, 431 P.3d 38 (Nev. 2018) (discussing the merits of alter ego doctrine under the heading "Alter ego claims"); *Gardner*

4

*v. R&O Constr. Co.*, 443 P.3d 549 (Nev. 2019) (reversing dismissal of an alter ego claim); *Magliarditi v. TransFirst Group, Inc.*, 450 P.3d 911 (Nev. 2019) (stating that "alter ego doctrine can be a separate cause of action when the claim is filed as a means for a judgment creditor to pursue the execution of a prior judgment"). Although the Nevada Supreme Court in *Magliarditi* only recognized a cause of action in the context of judgment creditors, that same court affirmed that "the alter ego doctrine applies to LLCs and partnerships" and adopted reasoning from another court that "alter ego can constitute an independent claim" when paired with another wrong. *Id.* (quoting *Maxus Liquidating Tr. v. YPF S.A.*, No. 18-50489, 2019 WL 647027, at *2 (Bankr. D. Del. Feb. 15, 2019)). Because the Nevada Supreme Court's reasoning supports alter ego as a standalone claim in this context, the Court therefore turns to whether Plaintiff plausibly alleged an alter ego claim.

Alter ego has three elements: "(1) The corporation must be influenced and governed by the person asserted to be its alter ego; (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008) (citation modified). Courts consider several factors, such as "co-mingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities," *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987), but "[n]o one of these factors alone is determinative." *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 497 (Nev. 1998).

At this stage, Zorts has plausibly alleged an alter ego claim. Although HR4's LLC agreement identifies both Mr. Reynolds and Mr. Engleka as members, Mr. Reynolds has a majority interest, and the company bears Mr. Reynolds's initials and jersey number. Compl. ¶ 3. On a motion to dismiss, the Court cannot credit Mr. Reynolds's narrative that Mr. Engleka's role as both a member of HR4 and recipient of an additional ownership stake from Mr. Reynolds several years before the establishment of the Joint Venture is dispositive of the lack of unity of interest and ownership. In forming the Joint Venture, HR4 assumed responsibility for negotiating with MLB, filming videos, and providing input for the Application—all responsibilities more commiserate with Mr. Reynolds's personal pedigree and expertise than with a separate business entity. *Id.* ¶¶ 21-22: JV Agreement § 3(b). Combined with the alleged undercapitalization of HR4, and the general lack of independent financial activity on behalf of HR4, MTD Opp'n 16, the Court concludes that the Complaint plausibly states an alter ego claim against Mr. Reynolds.

### 2. *Fraudulent Inducement and Negligent Misrepresentation Claims (Claims 5 and 7)*

Next, the Court turns to Zorts's claims of fraudulent inducement and negligent misrepresentation, which support some of his other claims. Fraudulent inducement has five elements: (1) falsity, (2) knowledge of the falsity of the alleged representations, (3)

5

scienter, (4) justifiable reliance, and (5) damages.[1] *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). Similarly, Nevada's definition of negligent misrepresentation includes falsity and justifiable reliance as elements. *See Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998). The difference between the two torts is that "instead of deceitful intent, negligent misrepresentation arises when one fails to exercise reasonable care in ascertaining the truth." *Wild Game Ng, Ltd. Liab. Co. v. IGT*, 131 Nev. 1364 (2015). Because of the overlap, the Court analyzes these claims together. Defendant disputes all elements except for falsity. MTD 13-16.

As to knowledge and scienter, Rule 9(b)'s particularity requirement does not apply. Fed. R. Civ. P. 9(b). Under the more forgiving Rule 8 standard, the Complaint plausibly pleads that Mr. Reynolds knew of the falsity of his representations about the status of the negotiations with MLB and FieldLevel, particularly given that he was responsible for maintaining the relationship between Zorts, HR4, MLB, and other parties. Compl. ¶¶ 45, 57-59. Indeed, the Complaint alleges that Mr. Reynolds met with other FieldLevel representatives and learned about FieldLevel's business model, which appears to be similar to that of Zorts, further supporting that Mr. Reynolds may have turned to FieldLevel as a substitute for Zorts. *Id.* ¶ 46; MTD Opp'n 28. Moreover, the Complaint plausibly alleges scienter based on Mr. Reynolds intentionally inducing Zorts to divulge confidential information to a known competitor after he provided assurances that such information would be used as part of a multi-party partnership with FieldLevel, MLB, and himself, only for Mr. Reynolds to then cut Zorts out of the deal. *Id.*; Compl. ¶¶ 52-54. Similarly, as to negligent misrepresentation, the Complaint plausibly pleads that Mr. Reynolds failed to exercise reasonable care when providing representations to Zorts about the status of negotiations. *Id.* ¶¶ 43, 45, 49, 52-62.

As to the reasonableness of Zorts's reliance, although Zorts is an established corporate actor, the JV Agreement expressly contemplates Mr. Reynolds playing the role of facilitator between the parties and MLB. *Id.* ¶ 22; JV Agreement § 3(b). By providing specific representations regarding the revised ownership and revenue share of what would be a four-way collaboration, Mr. Reynolds further justified Zorts's reliance, as to Zorts, Mr. Reynolds was doing his job to try to close the deal with MLB. Compl. ¶¶ 58, 114; MTD Opp'n 29. At this posture, the Complaint contains sufficient factual allegations to support Zorts acting reasonably in accepting, based on Mr. Reynolds's representations, that FieldLevel would become an additional partner and then divulging its confidential information to uphold its end of the JV Agreement. Compl. ¶¶ 63, 66-67, 111-13.

Finally, Defendant argues that any allegations of damages based on loss of first-mover advantage are speculative. ECF No. 41 at 10-11. At this stage, however, Plaintiff has

---

[1] To the extent that Nevada and New Jersey law differ, Defendant did not affirmatively dispute the issue for the purposes of the MTD, so it is waived. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) (recognizing that litigants abandon choice-of-law objections that they fail to raise).

plausibly pled the existence of non-speculative damages, including the potential for lost opportunities based on Zorts's reliance on Mr. Reynolds. *See Roll v. Singh*, No. 07-cv-04136, 2010 U.S. Dist. LEXIS 47498, at *60 (D.N.J. Apr. 12, 2010) (reasoning that a complaint plausibly pled non-speculative fraud damages based on lost opportunity or lost profits that were "directly related" to the defendants' alleged misrepresentations).

### 3.      *Trade Secrets Claims (Claims 2 and 3)*

Plaintiff's next category of claims is for misappropriation of trade secrets under federal and Nevada law.  The parties agree that the same substantive body of law applies to both federal and state claims.  MTD 11; MTD Opp'n 16.

The elements of a trade secrets claim are "(1) the existence of a trade secret (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce, and (3) the misappropriation of that trade secret."  *Mallet and Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021) (citation modified); *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025) (defining the elements similarly).  Holders of trade secrets must "take[] reasonable measures" to protect them.  18 U.S.C. § 1839(3)(A).  However, "[i]t is also well established that confidential disclosures to employees, licensees, or others will not destroy the information's status as a trade secret."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 661 (9th Cir. 2020) (citation modified).

Defendant's only basis for dismissal is that Zorts failed to take reasonable measures to keep its trade secrets protected by voluntarily disclosing its trade secrets without an NDA.  MTD 12-13.  Conversely, Zorts's counters that (1) the JV Agreement prohibits Mr. Reynolds from disclosing trade secrets and (2) Zorts only disclosed the trade secrets because Mr. Reynolds made false representations that FieldLevel was not a potential competitor.  MTD Opp'n 20-22.  Zorts's second argument is dispositive; as the Court determined, Zorts plausibly alleged that Mr. Reynolds fraudulently induced it to disclose its trade secrets. *See supra* § II(B)(2); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 387 (3d Cir. 2016) (recognizing that fraud is an improper means of acquiring a trade secret).  Moreover, with these factual allegations, the Court cannot "decid[e] whether a plaintiff has sufficiently disclosed its trade secrets," which is "a fact-specific question to be decided on a case-by-case basis." *Oakwood Labys LLC v. Thanoo*, 999 F.3d 892, 906 (3d. Cir. 2021) (citation modified).  Plaintiff's trade secrets claims can therefore proceed.

### 4.      *Breach of Fiduciary Duty Claim (Claim 6)*

Turning to Zorts's breach of fiduciary duty claim, Defendant's sole basis for dismissal hinges on whether Reynolds, who is not a member of the Joint Venture, owed a fiduciary duty to Zorts based on his role as a manager of HR4.  MTD 17; MTD Opp'n 33; Compl. ¶¶ 120-21; *see Guzman v. Johnson*, 483 P.3d 531, 538 (Nev. 2021) (recognizing the "existence of a fiduciary duty" as an element).

Here, Plaintiff does not plausibly allege the existence of a fiduciary duty between Mr. Reynolds and Zorts based on Mr. Reynolds's role with HR4.  The principle that "[a]

7

corporate officer or director stands as a fiduciary to the corporation" only applies to the parties to the Joint Venture—Zorts and HR4, as well as between any officers or directors of the Joint Venture and the Joint Venture—not to the underlying officers of the joint venturers. *Cf. Leavitt v. Leasure Sports Inc.*, 734 P.2d 1221, 1224, 1227 (Nev. 1987) (discussing breach of a fiduciary duty where two couples created a joint venture, and all four individuals were directors of the joint venture). Plaintiff does not allege that Mr. Reynolds owed fiduciary duties to the Joint Venture based on his role as an administrator of the Joint Venture, nor based on any allegation of a personal relationship between Zorts and Mr. Reynolds outside of his role at HR4. JV Agreement § 2(a); *but see Rosenthal v. Poster*, No. 07-cv-01204, 2008 WL 4527859, at \*3 (D. Nev. Sept. 30, 2008) (declining to dismiss individual claims against a corporate officer where the plaintiff alleged a personal relationship and private contact with the corporate officer). Accordingly, Plaintiff's breach of fiduciary duty claim is dismissed.

### 5.     *Tortious Interference Claim (Claim 8)*

Proceeding to Plaintiff's tortious interference claim, also known as intentional interference with contractual relations, Defendant argues that the Complaint failed to identify the economic advantage, or contractual relationship, with which Mr. Reynolds interfered. MTD 19. The Court agrees. The Complaint simply reincorporates the prior allegations and then asserts that Mr. Reynolds "tortiously interfered with Zorts' economic advantage for the reasons stated above." Compl. ¶ 135. This conclusory allegation does not plainly state the contractual relationship at issue, which is a critical element of Zorts's claim. *See J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (pronouncing "a valid and existing contract" as an element). In opposition, Zorts identifies a "prospective relationship among Zorts, HR4, MLB, and FieldLevel," not a contract. MTD Opp'n 35. Simply put, the Court cannot proceed further when the Complaint does not identify a real, then-existing contract at issue.

### 6.     *Unfair Competition Claim (Claim 4)*

Next, Mr. Reynolds argues that Nevada does not recognize a standalone tort for unfair competition because it is otherwise preempted by Nevada's trade secrets statute and is duplicative of Plaintiff's other claims. MTD 19-20. Indeed, under Nevada law, "NRS 600A.090 precludes a plaintiff from bringing a tort or restitutionary action 'based upon' misappropriation of a trade secret beyond that provided by the [Uniform Trade Secrets Act]." *Frantz v. Johnson*, 999 P.2d 351, 357 (Nev. 2000) (per curiam) (citing with approval *Hutchison v. KFC Corp.*, 809 F. Supp. 68, 70 (D. Nev. 1992)). The Nevada Supreme Court noted that the statute does not "provide[] a blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret" and encouraged future courts to examine whether the factual circumstances "do not depend on the information at issue being deemed a trade secret." *Id.* at 357 n.3. Accordingly, the Court concludes that unfair competition may exist as a standalone cause of action under Nevada law, depending on how it is pleaded.

8

That said, as alleged here, Plaintiff's unfair competition claim is duplicative. Plaintiff's theory of unfair competition is that Zorts was induced to disclose its business model and strategy to MLB and its competitors based on Mr. Reynolds's representations, which overlaps with the theory underlying Plaintiff's fraudulent inducement, negligent misrepresentation, and trade secrets claims. Compl. ¶¶ 104-06; *see MZL Cap. Holdings, Inc. v. TD Bank, N.A.*, 734 F. App'x 101, 106 (3d Cir. 2018) (affirming dismissal of a duplicative claim). Accordingly, Plaintiff's unfair competition claim is dismissed.

### 7. *Declaratory Judgment Claim (Claim 10)*

Finally, Zorts seeks a declaratory judgment that "Zorts is the owner of all the intellectual property created for the Application." Compl. ¶ 153. Defendant offers two arguments in support of dismissal: (1) because Mr. Reynolds is not a party to the JV Agreement, Rule 19 prohibits entering a declaration here; and (2) the JV Agreement's text contradicts the relief Zorts seeks. MTD 21-22.

As to Defendant's first argument, he is correct that parties to disputed contracts "generally have a legally protected interest under Rule 19(a)(1)(B)(i)." *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 233 (3d Cir. 2023). Of course, HR4 may move to intervene here without destroying the Court's jurisdiction. And as Plaintiff notes, Zorts has plausibly alleged an alter ego claim, which can proceed into discovery. *See supra* § II(B)(1); MTD Opp'n 37. If HR4 is an alter ego of Mr. Reynolds, then Mr. Reynolds can vindicate HR4's interest in its intellectual property. It would be inconsistent to dismiss Plaintiff's declaratory judgment claim while permitting the alter ego claim to proceed, particularly at this early posture.

As to Defendant's second argument, Defendant notes that any "dispute would involve which specific pieces of intellectual property there is an ownership dispute about," MTD 22, to which Plaintiff identifies several underlying factual disputes that are improper to resolve now, such as the specific intellectual property items that were created for the Application and which party contributed more to the development of each category of intellectual property. MTD Opp'n 39-40 & n.11. Because the Complaint includes well-pleaded facts regarding features that Zorts created that appear to be disputed, Compl. ¶¶ 23, 25, 27, 152-53, Plaintiff's declaratory judgment claim may proceed.

## III. CONCLUSION

Because the Court lacks the power to compel arbitration outside of New Jersey, the Arbitration Motion is **DENIED**. The MTD is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows. As the case proceeds into discovery, the parties are encouraged to avoid duplicating resources with the ongoing arbitration proceedings.

**DATE:** May  21st 2026

WILLIAM J. MARTINI, U.S.D.J.

9